Thank you. May it please the court, my name is Sam Bondaroff. I'm here on behalf of the plaintiff appellants. We are here today to focus primarily on a claim for breach of the fiduciary duty of prudence under ERISA against the trustees of the LifeTouch employee stock plan with respect to the valuations of that stock that were done in June of 2015 and June of 2016. Plaintiffs have alleged that prior to those valuations, LifeTouch endured a series of significant financial and commercial setbacks that should have resulted in a valuation that would have been significantly lower than the very modest valuations that actually occurred. What's the significance of that for an ERISA, for an ESOP plan? How can there be liability if there was no alternative? Isn't that what the Supreme Court in Dudenhofer was getting at in its plausibility analysis? Remember, there's a significant difference in the prudence duty with an ESOP. What is that? Yes, Your Honor, there is. What is it? Let's get it on the table. Sure. The most significant duty that an ESOP fiduciary does not have. The most significant duty that it does not have? Prudence. It does not have a duty to diversify. Yes, that is correct. And that is the most significant aspect of this case. I gather your remedy was they should have dumped the LT stock. They should have destroyed the employee ownership of the company. Well, that is one option that they could have taken. And the lack of the duty of prudence's diversification requirement does not mean that under all circumstances, if an employee stock plan becomes imprudent. What does it mean here? What's the alternative that you pleaded that Dudenhofer requires? One, they could have, what we actually allege here as far as the trustee defendants go, is not that they should have dumped the stock. What the trustee defendants should have done is investigate the potential overinflation of the stock. The remedy here, what they should have done is taken a closer look, lived up to their duty to monitor. Now, what the Aesop or Risa case says that just failing to investigate whether the employer stock is overvalued breaches the duty of prudence? Well, for one thing, Dudenhofer itself and Tibble v. Edison both stand for that proposition. I haven't read the second case you cited. I've certainly read the first. I don't agree with that. Okay. Well, the duty of prudence under Tibble v. Edison, and Tibble v. Edison applies across the board to the duty of prudence, says that there's an ongoing duty to monitor the prudence of any Risa investment. The only difference that Dudenhofer and its progeny... That was an Aesop case? No. Well, okay. But it is still relevant because Dudenhofer only, when Dudenhofer says that diversification is not required... But this is a private right of action. This is not the Secretary of Labor's case. That is true, but... Okay. So you have to have a remedy. You have to plead a remedy to survive dismissal. Dudenhofer still allows for prudence claims to be brought against Aesop's. It still allows for claims that an Aesop has become imprudent if there is artificial inflation of the stock. Dudenhofer still holds that to be true. Amgen... What would create artificial inflation? What we've alleged here is that the company itself, in providing information to the third-party appraiser, tried to inflate the value of the company to make it appear that it was performing better and doing a more robust business than it was doing. So is your allegation that they put misleading information in front of the evaluator? No. It is. We no longer are appealing a claim directly based on that. Rather, the claim here is that if the trustees had been doing their job... But essentially, following Judge Loken's line of inquiry, isn't your claim essentially a claim of intentional misleading rather than simply not being prudent? Respectfully, no. It is not. That's a separate claim. At the lower court, we had two distinct claims. One was a claim that Your Honor just articulated, that the company itself and the board of directors provided misleading information to the third-party appraiser, and that was a breach of the duty of loyalty. That claim we are not appealing the dismissal of. The claim against the trustee defendants is not that they provided misleading information. We don't allege that. Rather, that they were insufficiently monitoring the ESOP, and if they had been sufficiently monitoring it, they would have noticed the disparity between how the company was actually doing and what the valuations were, and they would have investigated that. Back to my question. Give me a case anywhere in a private right of action against ERISA fiduciaries that's granted damages for merely failing to investigate without having to pursue a remedy, a basically approximate causation analysis that would show it made a difference. Dudenhofer and all the cases that flow from it all stand for the proposition that you can bring a prudence claim against an ESOP fiduciary if the ESOP fiduciary should have knew or should have known that the stock had become imprudent. It doesn't have to be that they have actual knowledge of the imprudence of the stock. What would their investigation have uncovered, or what would have been the nature of the investigation that would have changed the stock valuation given the market for the service? We allege that it would have uncovered that the company was providing misleading information to the third-party appraiser, and that therefore they would have realized, okay, these valuations are not correct. People are buying the stock at an inflated price and thereby being harmed. Wait, people? Employees. You mean employees? Yes. You mean the plan members? Yes. So is the claim that all the stock should have been sold, or is it only for the amount invested in 2016 and 17? The claim, the damages would be based on people who held or bought in 2015 and 2016, who bought at the inflated price. Those are the only plaintiffs. And to the extent that plan participants were deprived of some value in their holdings by virtue of those employees who left the company during that time and cashed out at the inflated price, because those people took from the pool of stock that they all ordered. Give me an ESOP ERISA case where plaintiffs recovered for a similar claim on similar facts. I don't care if it's the district of Hawaii. There's the Bannon case in the Southern District of Georgia. It was found that pleading a failure to investigate, and that was actually a public company stock, not a private company, but that was a public company stock, failing to investigate the potential artificial inflation of the stock was sufficient to state a cause of action, Bannon v. Bankshare's case. Counsel, could you address the applicable pleading standard here in terms of Rule 8a or verses 9? And specifically, I was wondering whether there was any allegation that the sitting methodology had changed from prior years. There's an allegation that it was misleading, but is there any allegation that it had changed from what was used previously? We do not have an allegation that – well, no, actually I withdraw that. The inference that can be drawn from our allegations, the reasonable inference that should be drawn from our allegations, is that this was a change, because the company was experiencing contraction of its market share, plant closings, store closings, et cetera, and to combat that and to make the company look better than it was, they did change the methodology and the information that they provided to the appraiser. Is there an allegation that that methodology was unique or uncommon in the industry? No, Your Honor. There's not much of an industry here, but this company was for a long time the only player, the largest player in this. I think the question about methodology is how you – how trustees for an ESOP maintain, monitor, whatever, investigate the value of the stock, and was the use of a third-party licensed or qualified appraiser consistent with ESOP industry practice? It is, but it's not enough. It's necessary, but not sufficient, because simply looking at what the appraiser does once a year and doing no more monitoring is inconsistent with the duty to monitor under Tibble v. Edison, which applies to ESOPs and every other ERISA investment. The duty to monitor is ongoing. You have to be able – most ERISA fiduciaries, whether they're looking at ESOPs or not, look at them on more than just an annual basis. So that's not enough. And to get back to Your Honor's earlier question, the standard that should be applied to all of these allegations with respect to the duty of prudence claim here is AA, because the claim is about what they did to monitor. Did they do enough? What should they have known at the time? And all of those allegations should be looked at under 8A, and none of them should be stripped out under Rule 9B. I would like to reserve the balance of my time for rebuttal. Thank you, Mr. Bonner. Ms. Hedinger? Thank you. Good morning, Chief Judge Smith, and may it please the Court. Kira Hedinger, arguing as amicus curiae on behalf of the Secretary of Labor. The Secretary is not here to address whether the factual assertions in an appellant's amended complaint meet Rule 8 or Rule 9. Those questions are better addressed by an appellant's counsel. Speaking up would help. I don't know that that's a mic, but I'm having trouble. Thank you for letting me know that, Judge Loken. I will, and please tell me again if you can't hear me. Rather, the Secretary filed his brief to address two errors in the District Court's decision below. First, the lower court errantly held that an allegation of providing inaccurate and misleading information was enough on its own to trigger 9B's heightened pleading standard. That's a misstatement of what the court held. Your brief basically sets up a straw man and then takes 20 pages to knock it down. Not unusual lawyering, but let's let the court very carefully said that because the difference between this and Streambend, of course, is there were multiple claims, one of which was not grounded in fraud. Here we have a single claim, one significant allegation of which the District Court concluded was grounded in fraud. Your brief never addresses what's wrong with that approach. Well, Your Honor, let me first address the first part of that and then the second part, if you will. The court itself at 896 said that the court will apply 9B to the plaintiff's claims of fraudulent data manipulation. And then it said, this alleged conduct, and I'm quoting, providing inaccurate and misleading information to the independent appraiser. But you have to read the whole thing. You have to read the sentences before and after that. And the sentences after that make it clear that the court was limiting its analysis of whether a claim out was appropriate to a claim it concluded was grounded in fraud, not simply inaccurate information. Manipulation is a fraud-filled word. So let's get to my question. Does the Department of Labor, in addition to what it briefed, does it also take the position that you can't carve out a portion of a risk of prudence claim that is, in fact, grounded in fraud if it is not pleaded in a manner that satisfies Rule 9B? Just to make sure I understand your question, Your Honor, are you saying that it can strike those allegations? Is that what you mean when you're saying... What other choice does it have? If the claim of imprudent conduct includes a claim, part of the imprudence was the trustees themselves manipulating data or conducting other conduct which is grounded in fraud, and the challenging plaintiff does not allege that fraud with the detail that 9B requires, what, in the Department's view, should the district court do? In the scenario that you just laid out, Your Honor, if there was a claim of fraud that was brought or what was held to be grounded in fraud and that was the cause of the fiduciary's breach, then under this circuit's precedence, 9B would have to be met. But as the Secretary views this complaint and the claims that are reserved on appeal, that is not what we have here. Instead, the Secretary views this complaint broadly, and the focus is not on the data manipulation. It is on what the trustees had to do after it discovered or in light of that data manipulation. That is the proper focus. And I think an example that... You didn't analyze that in your brief. Why is the whole question of causation, why are you inserting causation in just a question of whether an allegation is pled sufficiently to be considered? Pardon me. I'm not trying to insert an element of causation. What I'm saying is... You just said cause the breach was your criteria. So maybe then I'm saying stemming from. If the allegation of fiduciary breach was from fraud itself, then that would have to meet 9B. No, this is manipulating stock price fraudulently. I think if you were representing the SEC, that would be an easy question. Yes, manipulating stock price is fraudulent. But here, the allegations against the trustees is that they conveyed inaccurate information to an independent appraiser, and that they failed to investigate the propriety of holding the stock. It's that they manipulated the number of sits that were then incorporated into calculating, estimating stock value. I believe those were the company executives that did that. It was the Secretary's reading of the complaint. But they were also the trustees. It is unclear whether those were also the trustees. Well, that's what 9B requires. If you're going to allege something that's grounded in fraud, sort out the who, what, where, when, and why. But failing to investigate the propriety of holding stock is the alleged breach. That is the breach. If I may, let me put out an example. Say that there is an investment scheme that is held to be a Ponzi scheme. That itself would be a fraud and would have to meet 9B. Now say, however, that there is an ERISA plan that invests in this investment scheme that is held to be a Ponzi scheme, and the trustees or the ERISA fiduciaries get information about the investment scheme that turns out to be wrong because it is a Ponzi scheme, and they convey it back to the plan and to an independent appraiser in the case of a privately held ESOP. Let's keep it within the ESOP framework. Your brief carefully avoids the complexities of ESOP fiduciary duties. Yes, Your Honor. Conveying it to the independent appraiser of an ESOP. That conveying of inaccurate information is not itself a fraud. The fraud is the Ponzi scheme, but it is a breach of ERISA's fiduciary duty because ERISA fiduciaries... I see that my time is almost up, so I will quickly conclude. But under ERISA, ESOP fiduciaries or fiduciary of an ESOP has a duty to convey accurate information. That in and of itself is a breach, but it's not a fraud, so it meets... If the district court's opinion is interpreted by this court, as my questions suggest, will the secretary be content with us to proceed to the factual details of this case? The secretary would disagree with that interpretation of the complaint because the secretary believes that... Yes, but we're the ultimate arbiters of that. I'm saying if the law... The law is, as I believe the district court based on... You know, the same district court that we affirmed in StreamBend. And the district judge was obviously tracking and analyzing from StreamBend to this somewhat different situation and attempting to capture the same analysis we affirmed there. Now, if we read that as having been successfully done, what's the department's remaining concern other than these plaintiffs may lose? The secretary would not take issue if you found that the alleged conduct was a fraud itself, that the conduct was the data manipulation and that was the basis for the breach. If the basis for the breach is... Wait a minute, if the alleged conduct... If some of the alleged conduct is found to be grounded in fraud, then the district court says, I put that aside in doing my Rule 8A analysis. Mm-hmm. What's wrong with that? The department does not take issue with that. Okay. And then... That's what I... In just a moment. That's what I was concerned about. Thank you. Thank you, Ms. Hettinger. Thank you. Mr. Hawley. Thank you, Your Honors, and may it please the court. As plaintiffs have acknowledged, there's only one claim that remains here today, and that's their claim that the stock of the ESOP, the LifeTouch ESOP, was artificially inflated due to the SIT scheme in 2015 and 2016. To Your Honor's point, there is a question of the remedy here. I'm not sure that they say it's because of the SIT scheme. That's what the district court carved out. Well, I think... They say even with the carve-out, they've still stated it's a stock inflation claim. I don't think that's correct, Your Honor. If you take a look at page 10 of their reply brief, what they say is that the stock was inflated by the SIT scheme, and that was done by senior executives at LifeTouch, and that because of that inflation, that caused harm. There's a question of the remedy there, which the only effect of that would have been that LifeTouch, the company, would have had to pay more money for the stock. But beyond that, they say that the stock was inflated due to the SIT scheme, and the trustee defendants, they now claim that the trustee defendants didn't know about it, but should have. That's their claim. And again, I would point the court to pages 9 and 10 of the opening brief, and page 10 of the reply. That's their claim. Now, it's undisputed that... First of all, this claim failed for two separate and distinct reasons. First of all, under 9b, this claim is clearly grounded in fraud, for reasons I'll discuss, and should have had to be pled with compliance with 9b. And no one disputes, no one's claiming here that these allegations meet 9b. That argument has been waived. But alternatively, it still fails to comply with Rule 8. But let's focus on 9b right now. As everyone acknowledges, as the DOL just acknowledged, claims that are grounded in fraud and are the cause of the complaint must be pled with particularity under 9b. Has any case had this situation that the district court faced, where it's not an entire claim that's grounded in fraud, but it's a significant part of the allegations supporting the claim? That's not stream-bend. This case is more difficult than stream-bend because of the way the Land Sales Disclosure Act was patterned after the securities laws. It was possible to pick out claims that were and weren't grounded in fraud. This one's different. So what cases like this one? So to get to your question, Your Honor, the first thing I will say, Your Honor, is I think this case is exactly like every other case because if you looked below, as Judge Erickson... Exactly like what case? I'm sorry. If you look below, Your Honor, this is exactly like every other case that has been alleged, Your Honor, because if you look below, the trustee defendants were active participants in the fraud. If you take a look at paragraph 11, the trustees were, quote, knew that the stock was overvalued during 2015-2016. If you take a look at paragraph 61 of the complaint, it says that... Well, you know, if you're right, then the whole claim should have been subject to 9B. Well, that's exactly right, Your Honor. That's exactly right. The only claim that remains... So the district court erred in doing an 8A analysis at all? No, Your Honor. No, Your Honor. The 8A claim has been waived. The 8A claim that the district court... But it was all in the prudence claim analysis. Well, Your Honor, there was really two claims that were below. Well, I know, but I can't... The way the private lawyers are sorting that out this morning is beyond me. I haven't studied the record enough. Sure, Your Honor, and what I... The district court said, I got two claims here. Right. And you come up and you say, well, we only got half of one on appeal, or we got one and a half, or I don't know what we got. If you take a look at plaintiffs' brief at 9 to 10, their opening brief, the only claim that they advocate on appeal is an artificial inflation claim. That's all that's left. OK, but the SIT business was part of that claim. No, it's the only part of the claim. It's the only part of the claim, Your Honor, because the only reason that the plaintiffs allege that the stock was inflated is because of the SIT scheme. The only reason that the stock was overpriced, the plaintiffs allege, is because of the SIT scheme. And again, I'd point Your Honor to 9 and 10 of their brief and to page 10 of their reply. What the trustee defendants are supposed to have done, they now allege they now have kind of morphed their claims and kind of amended, essentially amended, their complaint on appeal to allege that the trustee defendants didn't know about the fraud. Well, the district court didn't think that. The district court analyzed what they argued this morning under 8A. I don't think that's correct, Your Honor, with respect. The whole 8A analysis has to be that. Right, and I think that that was a claim that was way below. I always thought the worst thing an appellee's counsel could do is abandon the best friend of the appellee's district judge. I'm sorry, Your Honor. No, Your Honor, I don't think Judge Erickson got it wrong. It's just that there were claims that were raised below that are no longer being advocated. The only claim here is that the SIT scheme inflated the price of the stock. Counsel, I'm not so sure that the amended complaint alleges that that's the only reason for the alleged overvaluation of the stock. They also talked about a decline in business and the failure of the valuation to accurately reflect this precipitous decline in business. It's certainly part of it, but is it the only basis for the overvaluation? On appeal it is, Your Honor. Let me address the 8A issue. I think that's been waived, but I'll address that as well, Your Honor. On appeal the only thing that they're saying is that the stock was overvalued because of the SIT scheme and therefore that overvaluation, that inflation, hid the negative events. On appeal they make it clear on page 10 of their reply that they're not challenging the valuation process done by the valuation. They don't challenge what the valuation people did. They just say they got bad information because of the SIT scheme. But I'm not so sure that any paragraph other than paragraph 61 alleges fraud. I agree with that, Your Honor. I agree. But again, I believe that the other arguments have been waived. And again, if you take a look at page 10 of the reply, I think you'll see that. But let's address, let's go on. Waived by the reply brief? Waived by... An issue of the district court analyzed was waived in a reply brief? I think that the reply brief... Circuit case that holds that. I think that the reply brief makes it clear that they only claim that they've... Both the opening brief and the reply brief make that clear. But let's address the 8A issue here, Your Honors. I do want to address it then. There's no question. So they do talk about a series of corporate events that happened in 2015 and 2016. And those corporate events, as a result, and they also acknowledge that during 2015 and 2016, the stock was valued by an independent appraiser, third-party appraiser. That valuation was ultimately approved by the trustee. Those valuations resulted in a 15% drop in the stock price from 2015 and 2016. If we evaluate that under 8A, there's no allegation that the process used by the independent valuation process was inappropriate. There's no dispute that they knew about the corporate events that happened in 2015 and 2016. And there's no allegation anywhere in the complaint that the drop of 15% was somehow disproportionate or substantially inappropriate, given those corporate events. So why would we even need to reach the issue of whether 9B is applicable? Why can't we just analyze it under 8A? Well, I think that 9B is plainly applicable, as Judge Erickson recognized, to the allegations of the SIT scheme. And to the extent there's a general claim that survives, I don't think it does. But to the extent there's a general claim that survives, that the valuation people just got it wrong. What I'm saying is if the amended complaint does not plead a plausible claim under 8A, why would you need to worry about 9B? You probably don't. I mean, if the SIT scheme... I agree with that, Your Honor. You certainly don't need to reach the 9B issue. It just fails under Rule 8. And I think it does, Your Honor. I think that there's no allegation at all of any kind suggesting that... no plausible allegation, at least of any kind, that the independent appraisers didn't accurately price in the adverse corporate events that happened in 2015 and 2016. It's just... you know, the stock dropped 15%. The stock would then drop another significant drop in 2017. But the plaintiffs themselves have acknowledged that LifeTouch was spiraling downward. And in their words, every year was worse than the last. So a drop of 26% in 2017 is not surprising. It's consistent with the complaint. And as the Second Circuit indicated in the Citigroup case, that you can't infer that a prior year's drop in value was somehow inappropriate just from some subsequent drop. So again, Your Honors, I think that if you look at the district court's opinion, there's no question that the trustees below were part and parcel of the fraud. Again, Paragraph 11, Paragraph 61 of the complaint, Paragraphs 16 and 20, to the extent that they allege artificial inflation, which is the only claim they've talked about here today, to the extent that they allege that there was artificial inflation of the stock, Your Honors, that clearly is reviewed under 9b. They were part and parcel of the claim. The claim is grounded in fraud because the claim doesn't exist if there's not fraud. So we think that that's dispositive of that. That's also consistent with the text of Rule 9b, which applies broadly to all allegations of fraud. It's consistent with the purpose to avoid strike suits and fishing expeditions, which is exactly what we have here. All the substantive allegations of fraud are found in a single paragraph of this complaint, Paragraph 61. And there's no detail to it. And as Your Honors noted, there's no indication that the method of counting sits was new or novel. There's no indication that it was material. There's no indication that it affected any of the inputs that would go into evaluation. Is there anything to indicate that it was unusual in the photography business? Nothing. There's nothing to even suggest that the independent evaluators didn't know about it. There's just nothing. It's found in one paragraph of the complaint. It is a prototypical, it's both implausible, but it also violates Rule 9b. There's nothing of the who, what, where, when, or why. No indication it affected the inputs. There's no indication that it affected the stock price at all, other than an utterly conclusory statement that the sit scheme increased the valuation of the stock. So again, to kind of summarize here, we believe that the sit scheme should be reviewed under Rule 9b. There's no question that that fails under 9b. There's no question that... And they try to make this distinction on appeal that there's some distinction between, now they say the trustees didn't know, and therefore that claim is separate and distinct from the claim of fraud. Well, first of all, Your Honor, that's not true. They did know. That's with the consistent allegations, and that's what Judge Erickson found in paragraph 2, footnote 2 of her decision, and she was clearly right about that. But second of all, even if they could amend their complaint on appeal, there's no question here, Your Honor, that the genesis of this entire claim is the sit scheme, that but for the sit scheme, there's nothing to discover, and there's nothing for them to find out. And so the distinction that the DOL is trying to draw and that the plaintiffs are trying to draw between those two claims just doesn't make any sense and would lead to absurd results because you could have a situation, Your Honor, where under 9... You could have a situation where you have a group of fraudsters who allegedly engaged in fraudulent act. That claim would be reviewed under 9B, but you could have people in the same complaint who simply didn't discover the fraud, and those people would be ruled... The allegations of fraud, the underlying allegations of fraud for them would be decided under Rule 8. You could have one group of people dismissed, another not dismissed. I don't see anything wrong, anything illogical about that. Well, it doesn't make... If the fraud allegations don't stay the claim, they don't. And again, 9B applies... 9B applies broadly to all allegations of fraud. And the purpose behind the rule of making sure that a plaintiff... The district court didn't say that paragraph 61 by itself did or did not state a claim. It simply said it was grounded in fraud, so I'm going to disregard Rule 61 in my analysis under Rule 8A of a breach of the duty of prudence claim. She found... I think that's... I agree with that, Your Honor. She found that paragraph 61 didn't comply with Rule 9B. I don't understand why you're running away from that. I'm not, Your Honor, and if I miscommunicate... The whole argument is, if you have to get there, that'd be all right, too. Yeah, I'm not running away from it, Your Honor. I agree with you that paragraph 61 should be stripped under 9B, and I do think that the rest has been waived by the plaintiffs on appeal, but just to reiterate the point, to the extent that we look at this sort of just misvaluation claim... Now, wait a minute. Would you give me a case... What's this waived on appeal? You mean because that precise issue wasn't... Even though it was briefed and argued and ruled on by the district court, it somehow didn't have a separate subpart of their brief on appeal? Well, it's not discussed at all, but again, I want to make sure that I address the question, too. Well, I need some... You know, we have a lot of... We address a lot of attention to what's waived and what's preserved and what's foreclosed and what isn't on appeal. That's a big deal to us. You come in here and say, wait, they waived it in their reply brief. Well, no, I think they waived it throughout. The reply brief just made the point clear. But just to address the 8A issue as well, if you strike the SIT schemes allegation from this, all that's left is a potential claim that the valuation experts mispriced the corporate events that happened in 2015 and 2016, and that's an utterly implausible allegation. They acknowledged that the valuation people had access to this information. There's no allegation. In fact, they acknowledge on appeal that the processes used by the valuation people were proper and prudent. And there's no indication that the 15% drop, other than conclusory statements, there's no allegation that the 15% drop was somehow disproportionate to those events or that they weren't substantively priced into the 15% drop. It's utterly conclusory allegations apart from that. So, again, apart from the waiver issue, there's just nothing that Judge Erickson properly concluded that stripping the SIT schemes allegation from the complaint, there's nothing left to suggest that the independent appraiser got this wrong or that the trustees, when they finally sort of ratified that decision, got that wrong either. There were corporate events that happened. And if it were otherwise, Your Honor, all you'd need to do to state an AESOP claim under Rule 8 that the valuation happened is put three or four negative corporate events in a couple of years without any kind of context. Remember that Dudenhofer indicates that under Rule 8 you have to do a careful, context-sensitive analysis of the claim to determine whether or not it states a claim. And it recognized the importance of Rule 8 and a risk of breach of judiciary duty claims. All we know is that there's a couple of corporate events that happened in 2015 and 2016. We have no sense of the impact they had on revenue, on prices, on costs, on anything at all. And there's nothing to suggest that the 15% drop that the evaluators approved in 2015 and 2016 to recognize was disproportionate to those events. Nothing at all. I'm, of course, happy to answer questions, Your Honor, but I do want to respond very briefly to the DOL's concern. You know, the DOL's concern here, Your Honor, is that the district court concluded that innocent misrepresentations were somehow subject to 9B. That's just plainly, as Your Honor recognized, that's just not what the district court held. So as long as that statement by the district court is not taken in isolation and out of context, you would agree with the Secretary that Rule 9B is not just generally applicable to that type of allegation? Yeah, I would say that's certainly not an issue that's raised here. I mean, there's a question as to whether or not that's a mistake. You know, it's not raised here because the SIT scheme is plainly and unambiguously an intentional act of fraud by senior executives at LifeTouch, which includes the trustees. So to what extent is it affected by, you know, 9B applies as a mistake or fraud as to innocent misrepresentations or negligent misrepresentations just isn't raised here. And I think that if you read the district court's decision in context, it's very, very apparent what she was trying to say. Unless your honors have any other questions. Thank you. Thank you, Mr. Hawley. Mr. Bergeroff, you're at rebuttal. A couple of very brief points. We need to correct the record here. The trustee defendants are not alleged to have participated in the SIT scheme. The allegation, the prudence claim against them is that if they had been adequately monitoring the investment, they would have noticed the disparity between the performance of the company and the actual valuations of the company, and they would have investigated and uncovered the SIT scheme. If you strip the SIT scheme allegations from that, from the analysis of the plausibility of that claim, you are going against the Second Circuit in Jander, the Seventh Circuit in Pew, the Ninth Circuit in Conchavie, London, the First Circuit in Textron, because all of those courts have held that if the claim is a lack of investigation, a lack of monitoring by a fiduciary who failed to uncover a fraud, that gets evaluated under 8A. It does not get evaluated under 9B. You only evaluate it under 9B when the claim is directly, like it was with our loyalty claim, that they manipulated the data. It is very important that we clarify that point, because otherwise we are applying the wrong standard to this case. And to go to Judge Graz's question from earlier, there is more here than just the SIT scheme. There is the layoffs, the plant closings, the contracting market share, the store closings. There is the fact that when a new fiduciary comes in in 2017, there's a 36% drop, even though we have alleged in our complaint that there is no material change in the company's fortunes between June 2016 and 2017. What you would expect to happen is you would have all the drop baked in in 2015 and especially 2016, and then it would at best stay flat in 2017. You would not expect to see it go just down a little bit, and down a little bit, and then when nothing changes, suddenly for there to be a big drop. None of this by itself wins the case, but under AA and ERISA and this court's decision in Braden, this court should look at all of those allegations in total, together, and make the inferences in favor of the plaintiff under ERISA. Thank you. Thank you, Mr. Bondaroff. The court wishes to thank all counsel for your presence and participation in argument this morning, the briefing which you have submitted, and we will take your case under advisement. You may be excused. Madam Clerk, would you call the case?